MUNICH ASSUR. CO., Limited, et al., v. DODWELL & CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1904.)

No. 975.

1. MARINE INSURANCE—INSURABLE INTEREST OF CHARTERER IN CARGO.

The charterer of a steamship has an insurable interest in goods in his possession as carrier to the full extent of their value against a loss for which it is possible that he may become responsible, and the question whether he has a right to recover on the policy is not to be determined after the loss by inquiring whether he is in fact then liable to the owners on account of such loss.

2. SAME—GENERAL AVERAGE LOSSES ON CARGO—CONSTRUCTION OF POLICY.

A marine policy issued to the charterer of a steamship insuring the cargo against general average charges, "as well in his or their own name as for and in the name and names of all and every other person or persons to whom the subject-matter of this policy does, may, or shall appertain in part or in all," is to be construed as covering the entire cargo in the vessel, whether owned by the charterer or by others, and the charterer is entitled to recover thereon the full amount of general average charges apportioned against the cargo.

Appeal from the District Court of the United States for the Northern District of California.

For opinion below, see 123 Fed. 841.

¶ 2. Marine insurance, general average, see note to Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 357.

Andros & Hengstler, for appellants.

Page, McCutchen & Knight, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. Dodwell & Co., Limited, a corporation, the appellee, was the charterer of the steamship Tacoma, and as such charterer it received on board a cargo of merchandise for transportation from Seattle to Nome, Alaska. Part of the cargo belonged to the appellee, but the greater portion thereof belonged to various shippers, to whom as a carrier it issued bills of lading. The appellee thereupon obtained from the Munich Assurance Company, Limited, the appellant herein, insurance on cargo valued at $100,000 in the steamship Tacoma, at and from Seattle to Nome, "against general average and salvage only." The policy insured "Dodwell & Co. as well in his or their own name as for and in the name and names of all and every other person or persons to whom the subject-matter of this policy does, may, or shall appertain in part or in all." It was not shown that the other owners of the goods authorized the insurance or ratified the same. On the voyage, owing to the stranding of the vessel in Behring Sea, a jettison of a part of the cargo became necessary. The loss of the owners of the jettisoned cargo became chargeable to the ship, freight, and cargo in general average. The appellee paid to the owners of such cargo the general average share, due from the goods which it owned, and paid them also the contributions due from cargo belonging to other owners. To recover the amount thus paid to the owners of the jettisoned cargo the appellee brought the present suit upon the policy of insurance. From a decree of the District Court adjudging it entitled to the full amount thus paid, the present appeal is taken.

The appellant admits that the policy covers the amount of the general average contribution paid by the appellee on its own goods on board the steamship, but contends that it is not liable under the policy for the amount of the contributions chargeable to the goods of which the appellee was not the owner, for the reason that the latter had no insurable interest therein. It is argued that as a common carrier or bailee the appellee could insure goods in its possession only against a risk which would expose it to loss or liability. There are some expressions found in the text-books which lend color to this view. Thus, in Gowan on Marine Insurance, 311, it is said: "The liability for general average on the policy of insurance cannot be greater than that of the assured on the contract of affreightment." And in Wood on Fire Insurance, § 294, concerning the insurable interest of a common carrier, it is said: "But his right to recover beyond the extent of his own interest must depend on the circumstance whether he is liable to the owner for the loss." To sustain that doctrine the author last mentioned cites Seagrave v. Union M. Ins. Co., L. R. 1 C. P. 305, and London, etc., Ry. Co. v. Glyn, 1 El. & El. 652. But if by the language of the text-book so quoted it is meant that the right of a carrier to recover beyond the extent of his own interest must depend on the question whether he is actually liable to the owner for the loss after it has occurred, it announces a doctrine not supported by the decisions referred

to or by other authority. The case first cited goes no further than to hold that the insured had no insurable interest for the reason that the insurance was obtained by a nominal shipper and consignee of the goods, who was a mere agent having no lien upon the goods for advances, commissions, or otherwise, nor the possession or custody of them as carrier, factor, warehouseman, or other bailee, nor any liability to account for their loss by the perils insured against. In the second case the insurance was obtained by carriers upon "goods their own and in trust as carriers." The court sustained the insurance contract, and the learned judges who composed the bench each expressed the view that the fact that the insured were not liable to the owners "does not at all affect the case." After a careful investigation of English and American decisions, we think the true doctrine is that a carrier has an insurable interest in goods in his possession as such, to the full extent of their value, against a loss for which it is possible that he may become responsible, and that the question whether he has the right to recover under the policy is not to be determined after the loss by inquiring whether in fact he is then liable to the owners of the property for the value thereof or for damage thereto. In the present case the appellee insured against general average. It is undoubtedly true that it might have become liable to the owners of the goods for loss on general average resulting from its own negligence in navigating the steamer. It may have been so liable in this case, for aught that the record discloses to the contrary. It had the right to insure against its own negligence as well as against the necessity of being required to enter into the inquiry whether its own negligence caused or contributed to the stranding of the vessel, the jettison, and the resulting general average charges.

In Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, 323, 6 Sup. Ct. 755, 29 L. Ed. 873, the court said:

"Any one who has made himself responsible for the safety of goods has a sufficient interest in them to enable him to obtain insurance upon them. * * * So a common carrier, a warehouseman, or a wharfinger, whether liable by law or custom to the same extent as an insurer, or only for his own negligence, may, in order to protect himself against his own responsibility, as well as to secure his lien, cause the goods in his custody to be insured to their full value, and the policy need not state the nature of his interest."

The opinion cites with approval Crowley v. Cohen, 3 B. & Ad. 478; London & Northwestern Ry. Co. v. Glyn, 1 El. & El. 652; Savage v. Corn Exchange Ins. Co., 36 N. Y. 655; and other cases. In Crowley v. Cohen the insurance was obtained by carriers upon goods, and upon tackle, etc., on 30 canal boats. The question was raised whether the interest of the insured was sufficiently described. The court was of the unanimous opinion that it was. Littledale, J., said:

"Goods in the custody of carriers are constantly described as their goods in indictments and declarations in trespass. The plaintiffs here were liable in particular cases for the loss of the goods they carried, and had a special property in them on that account. The goods were for the present purpose their goods."

In London, etc., Ry. Co. v. Glyn the insurance was upon "goods their own and in trust as carriers." The purport of the decision in that case has already been referred to. Savage v. The Corn Exchange Co. was

a case in which the carrier insured against any loss or damage he might sustain "on cargoes on account of himself or others." The court said:

"The plaintiff was a common carrier, and received the goods for transportation. As such he was bound to make safe delivery at the place of destination, unless excused by the act of God or the public enemy. His obligation to the owner of the cargo, as well as his interest therein for advances and freight, vested in him an insurable interest to the extent of the fair value of the property covered by the contract of indemnity."

Other decisions are of similar import. In Waters v. Monarch Assurance Co., 5 El. & Bl. 870, it was held that a warehouseman, whose responsibility for goods intrusted to his charge is of a lower degree than that of a carrier, had an insurable interest in goods in his possession, "although he is liable only for his own negligence to the owner." In Baxter v. Hartford Fire Ins. Co. (C. C.) 12 Fed. 481, Judge Gresham held that a commission merchant operating a grain elevator had such an interest in the grain deposited with him by others as to authorize him to insure it for its full value against loss by fire, notwithstanding that the contract between him and the depositors of the grain stipulated that fire was at the owner's risk. In Waring v. The Indemnity Fire Ins. Co., 45 N. Y. 606, 611, 6 Am. Rep. 146, the court said:

"Agents, commission merchants, or others having the custody of, and being responsible for, property, may insure in their own names; and they may, in their own names, recover of the insurer not only a sum equal to their own interest in the property by reason of any lien for advances or charges, but the full amount named in the policy up to the value of the property. * * * The right is put upon the fact that, having the possession of the property exclusive as to all but the owner, to whom they are responsible, they have the right to protect it from loss, so that it or its value may be rendered to the owner when he calls for his own."

In Eastern Railroad Co. v. Relief Fire Ins. Co., 98 Mass. 420, 423, the court said:

"A common carrier has an insurable interest in the goods carried by him, which he may insure to their full value without regard to his liability to the owner of the goods."

In Commonwealth v. Hide & Leather Ins. Co., 112 Mass. 136, 17 Am. Rep. 72, a policy of fire insurance was issued to a common carrier upon "any property upon which they may be liable in freight building or yards." It was held that the policy covered merchandise belonging to other parties for which the carrier was liable as a common carrier, although other common carriers were by contract bound to indemnify it for all loss thereon. So, in Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, 543, 23 L. Ed. 868, it was held that warehousemen having goods in their possession "may insure them in their own names, and in case of loss may recover the full amount of insurance for the satisfaction of their own claim first, and hold the residue for the owners." In California Ins. Co. v. Union Compress Co., 133 U. S. 387, 409, 10 Sup. Ct. 365, 33 L. Ed. 730, the court announced the same doctrine. The underlying principle of all of these cases is that a possible liability of the carrier may result from the risk insured against, and that this creates an insurable interest.

It 'is contended, further, that the policy by its terms covers only the interest of the appellee in the cargo, and that there is nothing therein to show that the insurance was to cover other goods. It must be assumed that the insurer was aware that the charterer was a common carrier. By its policy it undertook to insure cargo valued at $100,000 in the steamer Tacoma. It did not undertake to insure the appellee in its own right only. It expressly stated in the policy that it insured the appellee as well in its own name "as for and in the name and names of all and every other person or persons to whom the subject-matter of this policy does,' may, or shall appertain in part or in all." These are comprehensive words, and clearly import that the insurance was to cover the whole cargo in the steamer, whether belonging to the appellee or to others. The appellant contends, however, that this language of the policy is no more than the equivalent of the phrase, frequently used, "on account of whom it may concern," and that it has the effect to limit the insurance to the insured and to those to whom he may transfer the property or an interest therein, and it directs our attention to the construction placed upon those words in Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229, where the court held that they were sufficient to show the intention to protect the interest of the insured or that of any person to whom he might transfer the insured property. In so holding we think the Supreme Court gave a wider meaning to the words than we have given to the language of the policy in the present case. Here the policy contemplated insurance, not only of the interest of the insured, but that of any person to whom the subject-matter of the policy at that time appertained. In Buck v. Chesapeake Ins. Co., 1 Pet. 151, 7 L. Ed. 90, where the policy insured the plaintiffs, naming them, and added the words, "to whom it may concern," it was held that the insurance covered the interest of an undisclosed owner of the goods at that time. We find no error in the decree of the District Court.

The decree will be affirmed.