**GREAT AMERICAN INDEMNITY CO. v. HANSEL B. SMITH, R. V. BARDEN, and FLORIDA INDUSTRIAL COMMISSION.**

24 So. (2nd) 42                                    June Term, 1945
December 11, 1945                                        Division B

*Shackleford, Farrior & Shannon,* for appellant.

*J. E. Satterfield, W. H. Wolfe* and *Raymond E. Barnes,* for appellees.

THOMAS, J.:

This appeal was brought by the insurance carrier against the Industrial Commission, the employer, R. V. Barden, and the employee, Hansel B. Smith, in an effort to reverse an order of the circuit judge affirming a decision of the commission that the policy under the circumstances we shall recount, and because of the provisions and conditions it contained, covered damages suffered by the employee.

For many years R. V. Barden had operated at 503 Fairmont Street in Clearwater a business known as Pinellas Music Company, on which he carried no workmen's compensation insurance. The company leased and repaired music machines, juke organs, and the like. After Hansel B. Smith had been an employee for many months and while he was servicing a coin-operated machine leased by his employer he suffered the loss of an eye, 4 October 1944.

Meanwhile Park Inn, Inc., conducted at 100 Causeway Street in the same city a "Bar, Grill, Restaurant and Liquor Package Store." On 29 October 1943 the appellant had issued

its policy of insurance containing this condition: "A—The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer [Park Inn, Inc.] engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto . . . " Attached was an endorsement as follows: "It is hereby understood and agreed, subject otherwise to all the terms, limits and conditions of this Policy, that: (1) The obligations of Paragraph One (a) of the Policy are intended to apply to all business operations of the Employer covered by the Workmen's Compensation Act referred to in the Florida Compensation Endorsement attached to the Policy, and carried on at any time during the term of the Policy, whether such operations are stated in the Declarations of the Policy or not . . . "

The insurance company's agent was notified by Park Inn, Inc., that it had sold its business to R. V. Barden and wished the policy transferred, whereupon this was done 17 February 1944. It is a fair construction of the testimony that the agent did not know the transferee or that he was operating Pinellas Music Company.

We must decide whether the employee's injury was covered by the insurance policy, that is, whether the policy originally protecting employees of Park Inn, Inc., and transferred to the purchaser, Barden, extended to a business then operated by him on which no insurance was carried. There is no question about the right of the injured employee to receive compensation from the employer.

Under the workmen's Compensation Law (Section 440.38, Florida Statutes, 1941, and F.S.A.) an employer must secure the payment of compensation by (1) (a) insuring with an authorized company or (1) (b) qualifying as a "self-insurer." Barden, trading as Pinellas Music Company, ignored both, not knowing, so he testified, that he was violating the law by not having "compensation coverage." In any event, he had not resorted to the former. When he purchased Park Inn, Inc., it had obtained insurance, and he became assignee of the in-

surance contract as successor owner of the assets of that corporation.

At the outset we referred to a "condition" of the policy and an "endorsement" titled "Florida Underscribed Operations Endorsement." We are told that the latter was inspired by the ruling of this court in Maryland Casualty Co. v. Jinks, 144 Fla. 373, 198 So. 17. There a policy was under consideration bearing the identical condition we have quoted. The declarations classified the operations as "Lumber Yard and Building Material Dealer . . . Code 8232" and "Clerical Office Employees—N. O. C. Code 8810." Premiums on other businesses of the employer, namely, a sawmill and planer mill, were disallowed by the trial court, and on appeal we affirmed the judgment.

Reading farther the "condition" in the present contract, there are found provisions relative to the computation of the ultimate premium and adjustments after taking into account rates and the advanced premium. We have quoted the first paragraph of the endorsement, which, incidentally, refers to the condition lettered A as "obligations." The second paragraph follows: "The Employer agrees to pay the premium on all operations not specifically listed in the Declarations at the time of the final adjustment of the premium, in accordance with Condition C of the policy, at the rates, and in compliance with the rules, of the Manual of Rates in use by the Company on the date of issue of the Policy."

This sends us on the "condition C" where we discover a provision that the insurer may inspect the employer's books, plants, etc., to determine the remuneration of employees.

From our examination of the conditions A and C, the endorsement, and the cited cases which is said to have prompted adoption of the endorsement we find that the subject with which they deal is money to be paid the insurer for the protection provided employees. Of course there is a relationship between the protection and the premium, but we are inclined to the view that the provisions for the latter do not necessarily determine the extent of the former.

In other words, it may well be that because of this endorsement premiums would be collectible from operations of

Park Inn, Inc., other than its grill, restaurant, and package store, and that there would be a corresponding obligation to protect employees of Park Inn, Inc., working in places other than those named. But still we are confronted with the prime question of the obligation under the contract to an employee who was and had been for some time engaged in a business of the purchaser and who, because of that purchaser's neglect, indifference, or ignorance, was not secured.

It seems to this writer that so far as the insurance contract and the fundamental obligations of the insurer are concerned, Barden merely took the place of Park Inn, Inc. The provision we quoted at the outset was that the premium would be based upon remuneration of all employees in the business described (Grill, restaurant, and liquor package store), "together with all operations necessary, incident or appurtenant thereto," conducted at the place described or elsewhere. The so-called Florida Endorsement stipulation that these "obligations . . . are *intended to apply to all* business operations of the Employer . . . and carried on at any time during the term of the Policy, whether such operations are stated in the Declarations of the Policy or not" must, we think, be construed to mean the activities of the insured with whom the company was then dealing.

Apparently it was meant to insure not only the grill, restaurant, and store, but all other business operations of Park Inn, Inc., but it could not have been contemplated that there would also be insured all employees of any person or corporation who at some time in the future would become the purchaser of all or part of the assets of the insured. The policy referred to the described and undescribed businesses of the insured, and when Barden, operator of a wholly unrelated business, stepped into the shoes of Park Inn, Inc., at the time the policy was assigned to him as such, it merely followed the business thus acquired and did not extend to the business in which he was already engaged. This view seems supported in Maryland Casualty Co. v. Little Rock Railway and Electric Co., 92 Ark. 306, 122 S. W. 994, See also Hardware Mutual Casualty Co. v. Collier, 69 Ga. App. 235, 25 S.E. (2nd) 136.

Another question hinges on the allowances for attorneys'

fees, and requires our supplementing the history of the case relative to these awards. The deputy commissioner, who held the employer liable and the carrier not, allowed the employee's attorney $50; the commission, upon reversing the decision as to the responsibility of the company, increased the fee $250, to be paid by the carrier; the circuit judge, when he affirmed the commission's order, required payment by the insurance company of additional remuneration of $350 to this attorney. Pursuant to a petition based on Section 625.08, Florida Statutes, 1941, and F.S.A., the circuit judge also ordered the carrier to pay the attorney for the employer $650. So, in the progress of the case $50 was assessed in favor of the employee's attorney and against the employer; $600 against the carrier for the benefit of claimant's attorney; and $650 against the insurance company for the employer's attorney. To recapitulate, the employer's and the employee's attorneys are to receive $650 each, and all of it must be paid by the carrier except the first award of $50.

Section 625.08, supra, upon which the petition to the circuit judge was based, provides that "upon the rendition of a judgment or decree . . . against an insurer in favor of the beneficiary under any policy or contract of insurance . . . there shall be adjudged . . . against such insurer, and in favor of the beneficiary . . . a reasonable sum as . . . compensation for his attorneys . . . "

In 1941, Section 34 of Workmen's Compensation Act (Chapter 17481, Laws of Florida, Acts of 1935) was amended (Section 440.34, Florida Statutes, 1941, and F.S.A.) to provide for the assessment of attorneys' fees if the employer or carrier declined to pay a claim within a stated time or resisted unsuccessfully such payment.

Appellant contends that the former of these statutes is wholly inapplicable and that no fee is awardable to the employer's attorney under the latter.

We held in Hardware Mutual Casualty Co. v. Carlton, 151 Fla. 238, 9 So. (2nd) 359, that a claimant injured before enactment of the latter could not be awarded attorneys' fees inasmuch as the law (Section 440.34) was not then in existence and could not have been a part of the contract.

True, we did not specifically decide that the fee was not recoverable under Section 625.08, supra, but we denied the petition, though that statute was extant.

The fact that the legislature six years after passage of the original Workmen's Compensation Act, when Section 625.08, supra, in practically its initial form had been the law since 1917, enacted the amendment to 440.34, supra, indicates to us that the law-making body intends the latter as authority to the commission to fix attorneys' fees in compensation cases and to the courts to allow or *increase* them.

To repeat, the first statute authorizes assessment of fees upon the "rendition of a judgment or decree" against an insurer and for a beneficiary. We are unable to interpret any of the orders here in question as judgments against appellant and in favor of the employer. The proceeding was in effect brought by the employee against both of them. They seem to occupy the same category, to the extent that each is responsible to the employee, and to facilitate the discharge of their obligation substitution of the carrier for the employer is provided. Section 440.41, Florida Statutes, 1941, and F.S.A. By the succeeding section every contract or policy must contain a provision to effectuate these requirements.

The stipulations of the insurance contract seem to support this view. For instance, the first part of Condition D reads:

"The obligations of Paragraph One (a) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the Company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the Company alone or jointly with this Employer. If the law of any state in which the Policy is applicable provides for the enforcement of the rights of such employees or such dependents by any Commission, Board or other state agency

for the benefit of such employees or such dependents, then the provisions of such law are made a part hereof, as respects any matter subject thereto, as fully as is written herein."

Appellees counter with the assertion that the circuit judge did not rely entirely on Section 625.08, supra, in charging appellant with a fee for employer's counsel, but also on the terms of the policy (Paragraphs III and IV). We do not find in them this authority. One obligates the insurer to defend for the employer all suits and proceedings instituted against him, the other to pay costs taxed against the employer in a "legal proceeding" defended by the insurer. We find in them no agreement that compensation of the employer's attorney may be fixed by the court and assessed against the insurance company.

The plan of hearings on compensation claims hardly resemble the adversary suit where insurer and insured are antagonists, and we think the pattern and design of the act refute the contention that Section 625.08 may be employed to place upon the carrier the burden of indemnifying employer or employee for the cost of services rendered by counsel.

By the terms of the policy and Section 38 of the law (Section 440.38, Florida Statutes, 1941, and F.S.A.) it appears that the thing actually secured is the "payment of compensation." It would seem that in a proceeding like this one the contest is primarily between the employee on the one hand and the employer and carrier on the other, the principal issue being whether compensation is due; the ultimate objective, to enforce its payment if the injury is found compensable.

In view of our conclusions as to nonliability on the policy and the inapplicability of Section 625.08, supra, it follows that the order of affirmance of the circuit judge is reversed, also all orders with reference to fees except the first one allowing $50 to the employee from the employer.

Reversed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.