399 So.2d 31 (1981)
SECURITY INSURANCE COMPANY OF HARTFORD, Appellant,
v.
COMMERCIAL CREDIT EQUIPMENT CORPORATION, Appellee,
The Glassworks, Inc., Jay Marden and Richelle Marden, Cross-Appellants.
No. 80-1449.
District Court of Appeal of Florida, Third District.
May 19, 1981.
Rehearing Denied June 19, 1981.
*32 McDonald & McDonald and David McDonald, Miami, for appellant.
Walton, Lantaff, Schroeder & Carson and Carey A. Randall and Joan S. Buckley, Miami, for appellee.
Nicholson, Bender & Chandler and Don G. Nicholson, Miami, for cross-appellants.
Before BARKDULL, NESBITT and BASKIN, JJ.
BASKIN, Judge.
An order granting summary judgment holding in effect that the mortgagee of an airplane was insured under a breach of warranty endorsement for loss of the aircraft confiscated by the Colombian government is the subject of this appeal by the insurer. We affirm upon a holding that exclusionary clauses in the insurance policy are inapplicable to the breach of warranty endorsement which provides coverage for the mortgagee. We do not decide either the insured owner's right to recover under the policy or the applicability of policy exclusions to the owner's claims.
In November, 1978 The Glassworks, Inc. purchased a Cessna airplane and financed it through Commercial Credit Equipment Corporation (CCEC). Glassworks obtained insurance from Security covering its interest in the aircraft. In addition, Glassworks obtained coverage of CCEC's interest under a breach of warranty endorsement to the policy through a Telex binder later confirmed by letter. The binder provided "all risk ground and flight hull" coverage.
Subsequently, a Glassworks' pilot flew the airplane to Colombia, South America, where it was detained by Colombian government officials who arrested and fined the crew. Although the crew was released, the airplane remained with the Colombian government.
CCEC sued to recover upon Glassworks' default of its promissory note which had been guaranteed by Jay and Richelle Marden, cross-appellants. CCEC also sued the aircraft owners and Security for Security's failure to pay under the breach of warranty endorsement. Security maintained that its policy insured direct physical loss, disappearance, or damage to the aircraft, not detention or restraint by a governmental authority. The trial court granted summary judgment in favor of CCEC against Security on the insurance question and against Glassworks and the Mardens on the promissory note.
Security's appeal challenges the entry of summary judgment on the ground that genuine issues concerning the nature of the loss and the applicability of the exclusionary provisions of the policy remain to be decided. CCEC argues in response that the exclusions in the policy are inapplicable. It contends the breach of warranty endorsement constitutes a separate insurance agreement between Security and CCEC. Glassworks, Inc. and the Mardens agree with CCEC. They have, however, filed a cross-appeal to protect their position should summary judgment be reversed on the insurance question but affirmed as to their non-payment of the note. Security's policy insuring Glassworks provides:[[1]]

*33 [Security] agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements of the declarations and subject to the limits of liability, exclusions, conditions, and other terms of this policy to afford those of the following coverages as specified in the declarations.
INSURING AGREEMENTS
... .
COVERAGE F  All Risks, Ground and Flight. To pay for any direct physical loss of or direct physical damage to the aircraft, including disappearance provided the aircraft is missing and not reported for sixty (60) days after take-off.
COVERAGE G  All Risks, Ground only excluding Taxiing. To pay for any direct physical damage to the aircraft while not in flight or taxiing.
COVERAGE H  All Risks, Ground only including Taxiing. To pay any direct physical loss of or direct physical damage to the aircraft while not in flight.
The exclusions relied upon by Security include:
EXCLUSIONS
This policy does not apply and no coverage is afforded:
... .
6. To any loss, or damage or legal liability directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.
... .
With respect to Coverages F, G, and H (Physical damage):
... .
17. To any loss or damage arising from war, invasion, civil war, revolution, rebellion, insurrection or war like [sic] operations, whether there be a declaration of war or not, or capture, seizure, arrest, restraint, or detention, or the consequences thereof or of any attempt thereat, or any taking of the property insured, or damage to or destruction thereof, by any government or governmental authority or agent whether secret or otherwise or by any military, naval or usurped power, whether any of the foregoing be done by way of confiscation, requisition or otherwise and whether in time of peace or war, and whether lawful or unlawful.
CCEC relies upon the breach of warranty endorsement furnished for an additional premium. It provides:
BREACH OF WARRANTY ENDORSEMENT COVERAGE F, G, OR H
In consideration of an additional premium of $130.00 (Inc.), it is hereby agreed
Loss or damage, if any, to the aircraft insured under this policy shall be payable as interest may appear to the insured and Commercial Credit Equipment Corporation, Addision, Ill. whose interest in the aircraft is that of a Bailment Lessor, Conditional Vendor or Mortgagee or Assignee of Bailment Lessor, Conditional Vendor or Mortgagee and who hereinafter shall be called the Lienholder. This insurance as to the interests of the said Lienholder shall not be invalidated by any act or neglect of the Lessee, Mortgagor or Owner of the within described aircraft nor by any change in the title or ownership of the property; provided, however, that the wrongful conversion, embezzlement or secretion by purchaser, mortgagor or lessee in possession under a mortgage, conditional sale or lease agreement of the aircraft insured is not covered under this policy, unless specifically insured against and premium paid therefore provided, also that in case the Lessee, Mortgagor or Owner shall neglect to pay any premium due under such policy *34 the Lienholder shall, on demand, pay the same.
Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated. (Emphasis added).
The breach of warranty contains its own exclusions, as indicated. The only insurance agreement delivered to CCEC was the Telex binder, later confirmed, providing all risk coverage with loss payable and breach of warranty clauses in favor of CCEC.
A breach of warranty endorsement creates a separate and distinct contract between a mortgagee and an insurance company. Glen Falls Insurance Co. v. Porter, 44 Fla. 568, 33 So. 473 (1902); Airvac Inc. v. Ranger Insurance Co., 266 So.2d 178 (Fla. 4th DCA 1972); National Casualty Co. v. General Motors Acceptance Corp., 161 So.2d 848 (Fla. 1st DCA 1964). Under a breach of warranty endorsement, a mortgagee is not affected by any act or default on the part of the mortgagor. A breach of warranty endorsement precludes a lien holder from being denied coverage for an "act [or] neglect of the mortgagor". 5A J. Appleman Insurance Law and Practice § 3401 at 293 (1970). Thus, no issue exists regarding confiscation and whether Glassworks' neglect led to loss of the airplane. Glassworks' neglect may not negate CCEC's coverage. Glen Falls Insurance Co. v. Porter, supra; National Casualty Co. v. General Motors Acceptance Corp., supra.
When exclusions contained in the main policy conflict with a breach of warranty endorsement, the breach of warranty endorsement prevails.
§ 42:686.  Relation to other policy provisions.
While all clauses of an insurance contract should be construed together, and the provisions of a mortgage clause must be read together and harmonized with the balance of the policy when reasonably possible, the mortgage clause must prevail in the case of an irreconcilable conflict between it and other provisions of the policy. That is, insofar as the provisions of the policy are inconsistent with an antagonistic to the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his rights. (footnotes omitted).
11 Couch on Insurance 2d § 42:686 (2d ed. 1963). We therefore conclude that exclusions in the main policy do not apply to the breach of warranty endorsement which provides coverage for "loss or damage".
Next, the insurer, Security, contends that "loss" must be a direct physical loss, such as damage to the aircraft, but not its detention or destruction. We disagree. The breach of warranty endorsement uses the term "loss" not "direct physical loss". When a policy provision remains undefined, common everyday usage determines its meaning. Fontainebleau Hotel Corp. v. United Filigree Corp., 298 So.2d 455 (Fla.3d DCA), cert. denied, 303 So.2d 334 (Fla. 1974);[[2]] Sanz v. Reserve Insurance Co., 172 So.2d 912 (Fla.3d DCA 1965). The clear import of "loss" includes the loss sustained by CCEC. We therefore hold that no issue remains to be determined concerning whether the confiscation was a "loss" within the coverage of the breach of warranty endorsement; CCEC was insured for loss of the aircraft under these circumstances.
Security maintains that the Telex binder furnishing the breach of warranty endorsement was issued by another company and did not establish Security's responsibilities. We find the argument to be without merit as the Telex binder was issued by an agent for Security in its behalf.
`[T]he acts of an agent performed within the scope of his real or apparent authority are binding upon his principal, regardless of whether the principal had knowledge of the agent's act.' 18 Fla.Jur. Insurance § 318 at 292-93 (1971); e.g., Eagle Fire Co. v. LeWallen, 56 Fla. 246, 47 So. 947 (1908).
*35 Fidelity & Casualty Co. of New York v. Britt, 393 So.2d 41, 42 (Fla.3d DCA 1981).
The contention that the binder did not contain the entire contract is also without merit; the insured was issued no other policy until after the litigation commenced.
For, these reasons, we affirm the trial court's decision on both the appeal and cross-appeal.
NOTES
[1] The record does not contain the original policy between Security Insurance Company and Glassworks. Security has submitted a sample contract which it asserts is identical to the original. Glassworks and the Mardens contend they never received the policy. In light of our disposition of this cause, we need not decide whether this sample is identical to the original policy.
[2] Overruled on other grounds in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla. 1980).